**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA M. ROCCO, | |
| Plaintiff, | Civil Action No. 17-3966 (ES) |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Angela M. Rocco's ("Plaintiff's") appeal of Administrative Law Judge Dennis O' Leary's ("the ALJ's") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 ("the Act"). (*See generally* D.E. No. 1). The Court has subject-matter jurisdiction under 42 U.S.C. § 405(g). And the Court decides this matter without oral argument. *See* D.N.J. Civ. R. 78.1(b); *see also* Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner of Social Security ("Defendant" or "Commissioner").

## I. Factual and Procedural Background

Because the Court writes primarily for the benefit of the parties, only the essential facts are recounted here. On August 22, 2013, Plaintiff completed an application for DIB, alleging disability beginning January 26, 2012. (D.E. No. 5-2, Administrative Record ("R.") at 132). The application was initially denied on August 25, 2014, and denied again on reconsideration on October 14, 2015. (*Id.* at 76–78 & 83–86). Plaintiff requested a hearing before an ALJ (*id.* at 87–88), which was held on December 3, 2015. (*Id.* at 19). The ALJ issued an unfavorable decision

on January 14, 2016 (*see id.* at 27; *see generally id.* at 19–27), concluding that, as of the date last insured ("the DLI"), Plaintiff "was not disabled under . . . the Social Security Act" because "based on the evidence in the record and [Plaintiff's] own testimony, she [wa]s able to resume her past relevant work" (*id.* at 27). Plaintiff appealed the unfavorable decision (*id.* at 14); and the Appeals Council issued a final decision denying Plaintiff DIB (*id.* at 1–6).

Plaintiff filed the instant appeal on June 2, 2017. (*See generally* D.E. No. 1). Plaintiff's brief in support of the appeal (D.E. No. 9 ("Pl. Br.")) requests that the Court reverse, because "evidence in the administrative record establishes entitlement and eligibility for" DIB, or remand because the ALJ's decision "[wa]s not based on the substantial evidence of record" (*id.* at 8). In response, Defendant filed an opposition brief under Local Rule 9.1(e)(2). (D.E. No. 10).

## II. Legal Standard

### A. Standard Governing Benefits

To receive DIB under Title II, a claimant must show that he is disabled within the definition of the Act, *see* 42 U.S.C. § 423, and that he "was insured under the program at the time of onset of his disability," *Kelley v. Barnhart*, 138 F. App'x 505, 507 (3d Cir. 2005). Additionally, he must satisfy the insured status requirements enumerated in 42 U.S.C. § 423(c).

Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in *any* other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (emphasis added).

"The Secretary of Health and Human Services has established a five-step sequential evaluation process" to determine whether a DIB claimant is disabled. *Moncur v. Comm'r of Soc. Sec.*, No. 17-4811, 2018 WL 5729910, at *2 (D.N.J. Nov. 2, 2018) (citing 20 C.F.R. § 416.920). The burden rests on the claimant to make a showing at Steps One through Four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But at Step Five, the burden shifts to the Commissioner. *Id.* If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. 20 C.F.R. § 416.920(a)(4). The Court details the steps below.

*Step One*. First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 416.972(a) & (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 416.920(b).

*Step Two*. Second, the claimant must show that his medically determinable impairment or the combination of his impairments was "severe" as of the DLI. 20 C.F.R. § 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). An "impairment or combination of impairments" is *not* "severe" *unless* it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)); *Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

*Step Three*. Third, the claimant must show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings

of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii).

***Step Four***. Fourth, the claimant must show that, as of the DLI, he lacked the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the claimant lacked the RFC to perform any work he had done in the past, the analysis proceeds. *See, e.g.*, *id.* at 429.

***Step Five***. Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner finds that the claimant is capable of performing jobs that exist in significant numbers in the national economy, DIB will be denied. *See id.*

B.  **Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). But "[t]he findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive . . . ." 42 U.S.C. § 405(g) (emphasis added). "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Chandler*, 667 F.3d at 359. And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360.

As observed above, the Court is bound by the ALJ's findings of fact if supported by substantial evidence—"even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). (Even an ALJ's "brief treatment" of a DIB claim, in a manner that "could be improved upon" and would cause the

Court of Appeals to "express concern," could be upheld under the substantial evidence standard. *See, e.g.*, *Baerga v. Richardson*, 500 F.2d 309, 312–13 (3d Cir. 1974) (citing *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185 (1944)).) "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

But "[a]lthough the ALJ . . . weigh[s] the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). Notably, that rule "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the rule] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ concluded that Plaintiff had last met the insured status requirements of the Act on December 31, 2015; and that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date . . . through her [DLI]." (R. at 22).

At Step Two, the ALJ concluded that through the DLI Plaintiff suffered from "degenerative disc disease of the cervical and lumbar spines," a "severe impairment;" and "retinal tear and cataract extraction," "non-severe impairments." (*Id.*). The Court recounts the specific evidence supporting that non-severe impairment determination below. (*See infra* Section IV.A).

At Step Three, the ALJ determined that, as of the DLI, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments" listed by the regulations. (*Id.* at 23). More specifically, the ALJ found that "[t]he record does not document a disorder of the spine, such as disc herniation, resulting in nerve root or spinal cord compromise." (*Id.* at 24). Similarly, the record contained "no evidence of lumbar spinal stenosis resulting in pseudoclaudication with the inability to ambulate effectively." (*Id.*).

At Step Four, the ALJ found that "Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) (lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 hours in an 8-hour day; and sit 6 hours in an 8-hour day)." (*Id.*). The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons [he] explained." (*Id.* at 24). The lion's share of the ALJ's analysis focused on Plaintiff's cervical and spine impairments (*see id.* at 24–26) and then concluded that "[i]n essence, the only issue in this case is if [Plaintiff]'s vision problems would preclude her ability to work on a computer to do her past work" (*id.* at 26). The ALJ observed that the "vocational expert testified that a hypothetical individual with the claimant's vocational profile would need to be able to look at a computer screen frequently (2/3 of an 8-hour day) in order to do [Plaintiff]'s past work" but that there was "no evidence showing that she could not do so." (*Id.*).

The ALJ concluded that through the DLI, Plaintiff "was capable of performing past relevant work as a Dispatcher, Motor Vehicle" and "[t]his work did not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity (20 CFR 404.1565)." (*Id.* at 27). Accordingly, the ALJ ruled that Plaintiff "was not under a disability . . .

at any time from January 26, 2012, the alleged onset date, through December 31, 2015, the date last insured." (*Id.*).

## IV. Discussion

Plaintiff apparently raises two primary arguments. (*See generally* Pl. Br.). First, Plaintiff contends that the ALJ erred at Step Two in concluding that the condition of Plaintiff's eyes did not amount to a "severe impairment." (*See id.* at 13–17; *id.* at 11 (contending that "[P]laintiff's visual impairments to constitute a 'severe impairment'")). Second, Plaintiff contends that the ALJ erred at Step Four in concluding that she had the RFC to perform her past relevant work. (*See id.* at 22–25; *id.* at 13 ("It is this RFC that is under current dispute . . . .")). Plaintiff focuses primarily on evidence of an eye impairment in support of those arguments. (*See, e.g.*, *id.* at 10–13 & 20–25). In response, Defendant first observes that Plaintiff's "claim proceeded through step four of the sequential evaluation process, rather than being denied at step two," because "the ALJ found *some of* Plaintiff's impairments to be severe at step two." (Def. Br. at 7 (emphasis added)). And, second, Defendant argues that "substantial evidence supports the ALJ's step four finding that Plaintiff could perform her past relevant work as a motor vehicle dispatcher." (*Id.* at 13).

For the reasons described below, the Court concurs that substantial evidence supports both the ALJ's overall conclusion and his findings at each Step.

### A. Step Two: Severity of Impairment

Here, the ALJ concluded that at least some of Plaintiff's impairments were severe enough to continue to Step Three. (*See* R. at 22–23). Therefore, as a threshold matter, the Court rules that even if the ALJ "erroneously concluded that *some* of [Plaintiff's] *other* impairments were non-severe, any [such] error was harmless." *See, e.g.*, *Salles v. Comm'r of Social Security*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (emphases added).

7

Moreover, the Court rules that substantial evidence supported the finding that Plaintiff's eye impairment was not severe. (*See* R. at 22–23).[1] More specifically, the ALJ found that Plaintiff received medical treatment for her left eye in April 2011; "reported good vision and on examination, visual acuity was 20/30 and 20/20" in July 2011; and that a doctor observed that Plaintiff was "doing very well, with stable retinal configuration." (*Id.* at 22–23). In November 2011, Plaintiff "reported that her vision was stable, with the left eye better than the right eye." (*Id.* at 23). But in March 2012, Plaintiff "underwent left cataract surgery, with an intraocular lens implant" and "reported a blur/shadow in her temporal visual field for the past week following surgery" and other adverse symptoms. (*Id.*). In November 2013, Plaintiff reported that since her surgery "she ha[d] had sensitivity to light and fe[lt] that her side vision in the left eye has decreased." (*Id.*). An examining doctor, Dr. Materna, observed that Plaintiff had "corrected visual acuity of 20/25" and "full visual field in the right eye [but only] moderate constriction of the left eye" and that Plaintiff "ambulated around the office well with no apparent difficulty." (*Id.* at 23).

At the hearing, Plaintiff testified that "her vision was bad after the cataract surgery and that her eyes were tearing a lot then and still tear terribly now," but these symptoms were "not noted in the treatment notes" of her doctor. (*Id.*).[2] She also testified that she had "*no* peripheral vision in her left eye," but Dr. Materna "noted only *moderate* constriction of [her] left visual field, as

---

[1] Even though "[t]he burden placed on an applicant at step two is not an exacting one," a reviewing court must uphold the ALJ's disposition at this step, like any other step, "if supported by substantial evidence on the record as a whole." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

[2] Although "any statements of [a claimant] concerning his or her symptoms must be carefully considered," an ALJ "is not required to credit them." *See, e.g.*, *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 404.1529(a)). For instance, even when a claimant "reported *extreme* pain to doctors and claimed that she had to *lie down most of the day*," an ALJ could reasonably rule against her on the basis of countervailing evidence. *See id.* (emphases added). "A claimant's statements about pain symptoms do not alone establish disability. The Act requires *objective medical evidence* showing the existence of an impairment which could reasonably be expected to produce the claimed level of pain." *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (emphasis added).

well as full visual field in the right eye and corrected visual acuity of 20/25 minus bilaterally for distance." (*Id.* (emphases added)). Similarly, a "nonexamining State Agency medical consultant," Dr. Pirone, reviewed Plaintiff's medical records and observed that Plaintiff "had bilateral corrected visual acuity of 20/25 and Goldmann [visual] fields *that were essentially normal* (80% efficiency in the right eye and 67% efficiency in the left eye)." (*Id.* (emphasis added)). (The ALJ gave "great weight" to that opinion "[i]n light of" corroborating evidence in the record. (*Id.*).)[3] Furthermore, Disability Determination Services "*found no visual limitations* and stated that the impairment of status-post cataract extraction was 'non-severe;'" and "the disability interviewer noted *no difficulty with seeing* . . . ." (*Id.* (emphases added)). The ALJ also relied on the testimony of a vocational expert and Plaintiff's own testimony that, despite her preexisting eye impairment, "she was unable to find work for reasons unrelated to" that impairment (*see id.* at 26–27).

In sum, Dr. Materna "noted *only moderate constriction*" of *only* Plaintiff's left visual field, "as well as *full visual field* in the right eye;" Dr. Pirone observed that Plaintiff had "Goldmann [visual] fields that were *essentially normal*;" Disability Determination Services "found *no visual limitations*;'" the disability interviewer noted "*no difficulty with seeing*;" and Plaintiff herself testified that "she was unable to find work for *reasons unrelated*." (*See id.* at 23 & 26–27 (emphases added)). Accordingly, substantial evidence supports the conclusion that Plaintiff's visual impairment did not place "significant[] limits" on her "physical or mental ability to do basic work activities." *See, e.g.*, *McCrea*, 370 F.3d at 360; *Leonardo*, 2010 WL 4747173, at *4.

In criticizing the ALJ's reliance on the foregoing substantial evidence, Plaintiff cites primarily to an ophthalmologist's letter dated April 11, 2011 (*see* Pl. Br. at 20 (citing R. at 216))

---

[3] If "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *See Coleman*, 494 F. App'x at 254 (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

and additional records pertaining to Dr. Materna's treatment, such as his "hand-drawing of [P]laintiff's left eye" (*see id.* at 20–22 (citing, *e.g.*, R. at 249 & 250)). Plaintiff also asserts that the ALJ "refuse[d] to recognize specialties . . . and relie[d] on orthopedists and internists to overrule opthalmalogists." (*See id.* at 22). Plaintiff, therefore, apparently asks that the Court *reweigh* the evidence before the ALJ—for instance, to give certain medical professionals' evidence greater weight than others' or place greater weight on the April 2011 letter. (*See, e.g.*, *id.*). But as the Court of Appeals has made clear, this Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *See Williams*, 970 F.2d at 1182. And "[w]here evidence in the record is susceptible to more than one rational interpretation, [the Court] *must* accept the [ALJ]'s conclusions." *See Izzo*, 186 F. App'x at 284 (emphasis added).

Accordingly, based on the foregoing substantial evidence, the ALJ properly determined that Plaintiff's eye impairment was not "severe" and the Court sees no reason to disturb that determination. *See, e.g.*, *Leonardo*, 2010 WL 4747173, at *4.[4]

### B. Step Four: Residual Functional Capacity Assessment

Even had Plaintiff's eye impairment been "severe," it would nonetheless have been her burden to prove that she lacked the RFC to perform her past relevant work. *See Plummer*, 186 F.3d at 428. Here, the Court rules that there was substantial evidence supporting the conclusion that she did not carry that burden.

The ALJ relied on the testimony of a vocational expert in order to find that Plaintiff "would need to be able to look at a computer screen frequently (2/3 of an 8-hour day) in order to do the [her] past work." (R. at 26; *see also* R. at 50–51). But the ALJ found that "there [wa]s no evidence [in the record] showing that she could not do so." (*Id.* at 26). And, as already discussed above,

---

[4] For this reason, the Court rejects Plaintiff's argument that the ALJ did not present a proper hypothetical to the vocational expert. (*See* Pl. Br. at 24).

there was substantial evidence in the record to the contrary conclusion that Plaintiff's eye impairment was not even "severe." (*See, e.g.*, *id.* at 22–23 & 26–27). In response, Plaintiff simply reiterates the argument, which the Court rejects, that the Court should re-weigh the record evidence. (*See, e.g.*, Pl. Br. at 24–25 (criticizing the "great weight" the ALJ assigned to Dr. Pirone's opinion and exhorting the Court to "honor[]" other "expert opinions in our record")).

As the Court observed earlier, even an ALJ's "brief treatment" of a DIB claim in a manner that "could be improved upon"—or even that is "concern[ing]" to the Court of Appeals—could be upheld under the substantial evidence standard. *See, e.g.*, *Baerga*, 500 F.2d at 311–13. Here, the ALJ did not treat Plaintiff's claim briefly and, for the reasons discussed above, the ALJ's ruling on Plaintiff's RFC was supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner. An appropriate Order will accompany this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**